# 𝔚ytheville.

TRIGG ET AL. V. CLAY ET AL.

July 23rd, 1891.

1. CONTRACT TO SELL GOODS—*Breach—Damages.*—The general rule is that all damages resulting necessarily and immediately and directly from the breach of the contract to furnish goods are recoverable, and not those that are contingent and uncertain.

2. IDEM—*Market—No market—Measure of damages.*—Where seller contracts to furnish goods at a place where there is a market wherein buyer can buy similar goods, the measure of damages is the difference between the price at which they were to be furnished him, and the price at which he can buy similar goods there; but where seller contracts to furnish goods at a place where there is no market wherein buyer can buy similar goods, and buyer has re-sold the goods that were to be furnished him there, the measure of damages is the net difference between the price at which they were to be furnished him there and the price at which he has re-sold them.

Appeal from decree of circuit court of Scott county, rendered March 27th, 1890, in a suit wherein T. P. Trigg, A. McBradley and H. Fugate, surviving partners of themselves, and James C. Greenway, deceased, partners doing business in the firm name of Trigg, Fugate & Co., were complainants, and H. B. Clay, Jr., and W. D. Kenner, partners in the firm name of H. B. Clay, Jr., & Co., were defendants. The decree being adverse to the complainants, they appealed. Opinion states the case.

*Daniel Trigg*, for appellants.

*Holdman & Ewing* and *J. J. A. Powell*, for appellees.

LACY, J., delivered the opinion of the court.

The suit is a foreign attachment in equity, brought to attach the property, situated within the jurisdiction of the court, belonging to the non-resident defendants, and to subject the same to the satisfaction of the debt of the plaintiffs. The case is, briefly, as follows :

The appellants, a firm of lumber merchants resident at Abingdon, in Virginia, made a contract by which they agreed to buy, at a stated price, lumber of agreed dimensions, from the appellees, a firm of lumber-getters, resident at Rogersville, in the State of Tennessee, the lumber to be delivered at Clinchport, in Scott county, in Virginia, from 500,000 feet to 700,000 feet thereof, and the plaintiffs agreed to accept the drafts of the said appellees to the amount of $3,000. And on the 28th day of November, 1888, the date of the contract, the appellee, H. B. Clay, Jr., of the said firm, represented to the appellants that 300,000 to 400,000 feet were already cut and dry or drying, and that the residue necessary to compensate for the $3,000 in drafts, to be accepted at sixty days, should be delivered at Clinchport at the maturity of the drafts. The drafts were all made in the first week in December, 1888, a few days after the contract was made, which was on the 28th day of November, as has been stated. The lumber was not delivered, not a foot of it, and the drafts were neglected and allowed to fall upon the hands of the plaintiffs, when the lumber had not yet been delivered and the drafts had been paid. So the plaintiffs, as had been agreed between the parties in case the said contingency should arise, that the drafts should have to be paid before the lumber in sufficient quantity had arrived, drafted back upon the defendants for the money thus paid out; but this action was treated with derision by the appellee, and the draft dishonored. Upon the hearing the circuit court decreed in favor of the plaintiffs for the $3,000 paid on the draft, and the costs of pro-

test, &c., and referred it to a commissioner to ascertain what damages the plaintiffs had sustained. It was proved that the defendants had absolutely refused to fulfil the contract, upon the ground that the lumber had been priced too low by them, and also refused to refund the money paid them under the contract. The plaintiffs proved that they were lumber merchants, and, as was known to the defendants, purchased the lumber for sale; and they proved that they had actually placed this lumber to their customers at a profit which amounted to $1,000, but which they were made to lose by the wrongful act and fraudulent conduct of the defendants, and the commissioner reported that the said plaintiffs were entitled to this sum of actual damages incurred by them, estimating the profits on the maximum amount of the lumber to be delivered under the contract. But the defendants excepted to this report " because the damage allowed is excessive and not supported by law, because the commissioner had based his damages on supposed profits instead of the market value of the lumber at the places of delivery."

The circuit court, by its decree of March 27th, 1890, sustained these exceptions, and held that the plaintiffs were entitled to no specific damages for the non-performance of the contract set out in the plaintiff's bill, and rested the matter where it had been placed by former decree, which decreed in favor of the plaintiffs for the amount paid on the said drafts.

From this decree the appeal is here. The idea of the circuit court was that the general rule applied, which fixed the difference between the market price at the place of delivery and the contract price agreed to be paid, upon the principle that the buyer could supply himself in the market overt, and, when he had been compensated for the excess in the cost over and above what his cost would have been under the contract, he had nothing more to complain of.

But this case does not come within that principle—(1) because there is no market at that place from which, or in

which, the plaintiffs could supply their need; (2) because there is no other market practically near enough to purchase the lumber and add transportation to the market price; (3) because the plaintiffs, relying on the promises and good faith of their bargainers, as they had a right to do, when they had themselves fully complied on their part by paying the purchase-money therefor, had contracted to sell this lumber at a profit, which profit is the basis on which the commissioner assessed his damages.

In a case like this, with such circumstances as we have here, the case where there had been a contract to re-sell them at an agreed price, and when there is no market to afford a surer test, the price at which they were bargained to a purchaser affords the best, and, indeed, very satisfactory evidence of their value. This was a purchase in that market, and there was no more for sale. In a case of such actual sale, why should the court go into conjecture as to what the goods were there worth? And, again, if lumber could have been purchased and brought there at a lower price, there is not only no proof of it, but we have satisfactory proof to the contrary, because the defendants had the lumber, and were, by their solemn contract, under the highest obligations to deliver it, to say nothing of the requirement of common honesty, when they had agreed to do it, and had collected the purchase-price. And yet they preferred to break their contract, and dishonored their bank obligation, rather than deliver this lumber at the agreed price, which they declared had been bargained at too low a price.

In Wood's Maine on Damages, section 32, it is said : " But if they (the goods) cannot be purchased for want of a market, they must be estimated in some other way. If there had been a contract to re-sell them, the price at which such contract was made will be evidence of the value."

In the Am. & Eng. Encyc. of Law it is said : " Where there is no market at the place of delivery the price of the goods in the nearest market, with the cost of transportation added,

determines their value." *Washington Ice Co.* v. *Webster,* 68 Me. 463; *Griffin* v. *Colvin,* 16 N. Y. 489.

In the case of *Culin* v. *Woodbury Glass Works,* 108 Pa. St. 220, it is said: "Upon the breach of a contract to furnish goods, when similar goods cannot be purchased in the market, the measure of damages is the actual loss sustained by the purchaser by reason of the non-delivery."

A distinction is drawn in some of the cases between a re-sale made at an advance subsequent to a contract of purchase, and a re-sale made at an advance before the contract of purchase, which was known to the seller of the goods. *Carpenter* v. *First National Bank,* 119 Ill. 354.

This is rather a fanciful distinction. It is not in accord with the ordinary usages of trade that a dealer—a man buying to sell again—should disclose his dealings with the same goods at a profit to his vendor. But if there were any sound principle upon which this could rest—if the seller could be supposed to enter into his contract upon the basis of a re-sale in which he had no interest—still in this case it is reasonable to suppose that a lumber-getter, selling 700,000 feet of lumber to a dealer in lumber, should know (1) that it was for a re-sale; (2) that this re-sale was to be on a profit, and (3) that he should know that his vendee would be damaged to the amount of his profit if the vendor should prove faithless.

But the true basis of the general rule is that, when there is a market, the vendee cannot be damaged except in the difference between what the lumber did actually cost him and what he had purchased it at from the seller to him. But this rule can have, upon reason, no application whatever to a case where there is no market: (1) because the disappointed purchaser cannot buy in that market, when there is no market to buy in, and (2) because the market price cannot be ascertained when there is no market.

Under the circumstances of this case, the commissioner ascertained the true and just amount of the damages.

It has been often held that profits which are the direct and immediate fruits of the contract are recoverable. There are many cases in which the profit to be made by the bargain is the only thing purchased, and in such cases the amount of such profit is strictly the measure of damages. Wood's M. on Dam., p. 82. It has been held that when the defendant refused to allow the contracts to be executed that the jury should allow the plaintiffs as much as the contract would have benefited them. Profits or advantages which are the direct and immediate fruits of the contract, entered into between the parties, are part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, and the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement. If the inducement to the plaintiffs to buy this lumber, they being lumber dealers and trading in lumber, was not the profits they were to make by a re-sale, what was their inducement? And if the sellers did not understand and contemplate this re-sale on a profit, what contemplation on the subject can be reasonably ascribed to them? See *Masterlon* v. *Mayor of Brooklyn*, 7 Hill (N. Y.), 62; *Morrison* v. *Lovejoy*, 6 Minn. 224; *Fox* v. *Harding*, 7 Cush. (Mass.), 516; *Derlin* v. *Mayor*, &c., 63 N. Y. 8; *McAndrews* v. *Tippitt*, 39 N. J., 105; *Kendall Bank Note Co.* v. *Commissioners of the Sinking Fund*, 79 Va. 563; *Bell* v. *Reynolds*, 78 Ala. 511.

An examination of the cases will show that the courts have been endeavoring to establish rules by the application of which a party will be compensated for the loss sustained by the breach of contract—in other words, for the benefits and gain he would have realized from its performance, and nothing more.

It is sometime said that the profit that would have been derived from the performance cannot be recovered; but this is only true of such as are contingent upon some other opera-

tion.   Profits which certainly would have been realized but for the defendant's default are recoverable.   It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit can be derived at all.

It is sometimes said that speculative damages cannot be recovered, because the amount is uncertain; but such remark will generally be found applicable to such damages as it is uncertain whether sustained at all from the breach. ·

Sometimes the claim is rejected as being too remote.   This is another mode of saying that it is uncertain whether such damages resulted necessarily and immediately from the breach complained of.   The general rule is that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain.

The latter description embraces, as I think, such only as are not the certain result of the breach, and does not embrace such as are the certain result of the breach, but uncertain in amount, that the plaintiff will be fully compensated by recovering the, value of his bargain.

He ought not to have more, and I think he is not precluded from recovering this by any infirmity in the law in ascertaining the amount.   *Wakeman* v. *Wheeler*, &c., 101 N. Y. 205; *Taylor* v. *Bradley*, 4 Abb. App. Dec., N. Y. 363; *Bell* v. *Reynolds*, 78 Ala. 511.

In this case the report of the commissioner was upon the correct principle, and the circuit court erred in sustaining the defendants' exception to the said report, for said exceptions should have been overruled and the commissioner's report confirmed.   The decree of the circuit court appealed from here is, therefore, erroneous, and the same will be reversed and annulled, and this court will render such decree as the said circuit court ought to have rendered.

HINTON, J., *dissented.*

LEWIS, P. (dissenting), said :

In this case I dissent from the opinion of the court, and am for affirming the decree of the circuit court. The case is narrowed down by the exception to the commissioner's report to the simple question of the measure of damages. The rule adopted by this court is, in my opinion, not only unjust, but contrary to the long-settled rule which governs in such cases. Here the measure of damages is held to be the loss sustained by the appellants by reason of their inability, on account of the default of the appellees, to fulfil certain contracts made by them for the sale and delivery of lumber to other parties. But those contracts were collateral to the contract between the parties to this appeal, and were, in point of time, subsequent thereto. They could not, therefore, have been in the contemplation of the parties when the contract was made, the breach of which is the subject of this controversy.

DECREE REVERSED.