Thomson, P. J.,
delivered the opinion of the court.
The appellee brought suit against the appellant to recover $276.29, the purchase price of certain articles of machinery-sold by the former to the latter. The defense was that the machinery was purchased by the defendant, and sold by the plaintiff, for use in connection with the defendant’s electric light and power plant, at Canon City Colorado; that at the time of the sale the plaintiff warranted the articles to be first-class in every particular; and specially warranted certain of them, called clutch pulleys, to be true running, well balanced, *301 and guaranteed that they would operate satisfactorily. Breach of the warranty was alleged in that the clutch pulleys were not true running, or well balanced, or of a good workmanship, and that they did not, and could not be made to operate satisfactorily. The defendant also averred that the articles were ordered and intended for use as a whole, that individually they were unsuited and unfit for any purpose in the operation of the light and power plant, or for any purpose for which they were sold; and that by reason of the defects in the articles, and their inferior workmanship, they were valueless to the defendant. It was further answered that the defendant, some three months after the purchase, notified the plaintiff that the machinery was of defective manufacture, and would not operate satisfactorily, and requested the plaintiff to take proper steps to remedy the defects, and cause the machinery to operate satisfactorily, or replace the same, but that the plaintiff neglected, failed and refused to comply with the request. The answer contained a counterclaim, in which it was alleged that the defendant paid the freight charges on the machinery from St. Louis, Missouri, the place of sale, to Canon City, amounting to $77.25; and that in testing the fitness of the machinery for the purpose for which it was furnished, the defendant expended in work, labor and money, a considerable sum, and was damaged by injury to its other machinery, and to its business, in further amounts; the entire damage and outlay, including the freight charges, aggregating $482.35, for which the defendant prayed judgment. The allegations of the answer and counterclaim were denied. The trial of the cause resulted in a judgment against the defendant for $11.13, from which it appealed to this court.
The following is the contract of warranty relied on by the defendant:
“ St. Louis, Oct. 25th, 1895.
“ Canon City Electric Light and Power Co.,
“ Canon City, Colo.
“ Dear Sirs: — In reply to yours of the 22nd we propose to furnish you goods below mentioned at prices herein quoted:
*302 “We guarantee all goods to be first-class in every particular.
“ Shafting will be made of the best material, straight, true gauge and well finished.
“ Flange couplings will be of strength equal to the strength of the shaft for which they may be ordered, and when fitted to shaft, will be keyed in place, faced off after being so keyed, and a true running line guaranteed.
“ Compression couplings will be of. strength equal to the strength of the shaft for which they may be ordered; will be .accurately fitted, and run on our live rolls after being keyed in place, and a true running line guaranteed.
“Bearings will be of suitable strength for the shaft for which they are ordered, will be self-oiling, and babbitted with a good quality of babbitt.
“We make pulleys for any belt duty, and guarantee them to stand the strain of the belt for which they may be ordered, to be true running, well-balanced, and of good workmanship.
“We make friction clutch pulleys for any belt duty, and guarantee them to transmit the full power for which they may be ordered, and to operate satisfactorily.
“ If any goods we may furnish do not come up to our representations, we will replace them free of charge, or refund the money paid for them.
“ Our guarantee and liability is limited as above stated. * * * We can furnish you a first-class job in every respect, guaranteeing all goods as per guarantee at head of this letter.”
The defendant’s letter of October 22, referred to in the foregoing, is not in the record, so that in interpreting the answering letter we have no aid from the outside, and must be confined to its own language. No representations are alleged, except those which it contains, and no fraud is charged. The sole reliance of the defendant is on the express warranty.
The rules for interpreting express warranties do not differ from those applied to other contracts. The object to be attained is an ascertainment of the intention of the parties *303 from the language which they have employed. We find here that the plaintiff agreed that its machinery should possess certain characteristics, and be capable of working in a certain manner; but we also find an express limitation upon its liability, in case the machinery should fail to answer the representations. The defendant purchased the articles upon this written statement, it exacted no other, and except for it, the rule caveat emptor would be applicable. It therefore has no remedy outside of the agreement of warranty, and as the plaintiff’s liability upon the warranty is defined and limited by the terms of the contract, it can be held to no greater liability. The agreement was that if the goods should fall short of the representations, the plaintiff would replace them without charge, or refund the purchase money. Its responsibilitjwas expressly restricted to the performance of this agreement, and it would incur no liability to the defendant except upon its failure or refusal to replace the machinery or refund the money paid. In this case no money was paid, so that there was none to be refunded; and the only legal duty resting upon the plaintiff, in case the machinery failed to meet the warranty, was to replace it free of charge. If, upon being notified, it had supplied other and sufficient machinery, its 'contract would have been performed ; but if it had refused to perform its contract, the defendant could have turned over to the plaintiff the machinery furnished, and replaced it with suitable machinery of the same character; and if the reasonable cost of the new machinery was greater than the price to be paid for the old, the excess would be recoverable against the plaintiff; or, the defendant might retain the old ■machinery, and subject it to such alteration and reconstruction as would bring it up to the guaranteed standard, and recoup the reasonable cost of the work against the plaintiff’s claim for the purchase money; or, the defendant, without replacing or remodeling the machinery, could keep it, and compel a deduction in its favor of the difference between the actual value and the purchase price.
But the defendant, equally with the plaintiff, is bound by *304 the terms of the contract of warranty, because it was the contract in pursuance of which it purchased the goods, and as that contract fixed the limits of the plaintiff’s liability, there can be no recovery against it, excepting within those limits. The defendant is therefore entitled to nothing on account of special or consequential expense, or loss, or damage, resulting from its attempted use of the machinery. The defendant offered to prove the cost of extra fuel used in the operation of its plant after the placing of the machinery, and before an ascertainment of its insufficiency; also to prove damage to defendant’s other machinery, in connection with which this machinery was attempted to be operated, resulting from the unsuitable character and construction of this machinery ; also to prove the expense of placing the machinery, and other expenses incurred in attempting to operate it. All this proposed evidence was rejected by the court, erroneously, as counsel for the defendant insists. But we disagree with counsel. In our opinion, as may be clearly seen from what we have already said, the evidence was inadmissible, and its rejection was not error.
The defendant further offered to prove the amount paid by it for freight and cartage on the goods from St. Louis to Canon City, but the court refused to admit the evidence. It appears that the goods were sold in St. Louis, and were delivered to the defendant on board the cars in St. Louis, and that the agreed purchase money was the price at St. Louis. To find whether the plaintiff was chargeable with the cost of transportation of the goods from St. Louis, we must look to the contract under which they were purchased. The plaintiff agreed in case they should not come up to its representations, if it did not replace them, to refund the money paid for them. As the goods were delivered at St. Louis, and the money to be paid for them was the price at St. Louis, the money paid to the carriers was not money paid for the goods, and was therefore not money which the plaintiff agreed to refund to the defendant. We think this evidence was properly rejected.
*305 There was no replacement of the machinery by either the plaintiff or the defendant, and there was no reconstruction or alteration of it by the defendant to bring it up to the warranty, so that the only question for determination was the damage sustained by the defendant, if it sustained any; and the measure of that damage was the difference between the value which the goods had in the possession of the defendant, and the agreed purchase price. The testimony was conflicting, but there was evidence that they possessed value, and what it was, was for the jury to say. The instructions submitted the questions involved with marked fairness, and were in entire harmony with the views we have expressed. The opinion of the jury, after hearing the evidence, and listening to the instructions, was that the defendant was entitled to an acquittal of the entire purchase money, except $11.13; and whatever we may think of the verdict, looked at in the light of the evidence, we feel quite certain that it furnished the defendant with no ground of complaint.
The judgment will be affirmed.

Affirmed.