Argued 30 October; decided 12 November, 1901.

## DEAN PUMP WORKS *v.* ASTORIA IRON WORKS.

[66 Pac. 605.]

SALES—BREACH—MEASURE OF DAMAGES.

Plaintiff was a sole manufacturer of exhaust steam condensers, but its goods were made for sale in open market, and had a readily ascertainable market value. Defendant wrote for data concerning condensers for engines of a certain size. Plaintiff replied that the specifications given were insufficient, but sent a general price list. Defendant then entered into contracts to furnish condensers to two steamships, and ordered condensers of a certain size from plaintiff, which sent a smaller size. Defendant received these, but refused to accept them as a compliance with its order, and subsequently ordered others of a larger size than any yet specified. *Held,* that defendant's set-off for non-compliance with its first order was limited to the difference between the market value of the condensers first ordered and those sent in response, and was not the difference between those so received and those afterwards ordered to fulfill its collateral contracts with the shipowners.

From Clatsop: THOS A. McBRIDE, Judge.

Action for the price of goods sold by the Dean Bros. Steam Pump Works, a corporation, against the Astoria Iron Works, a corporation. From a judgment in favor of defendant, plaintiff appeals.                                          REVERSED.

For appellant there was a brief and an oral argument by *Mr. Chas. R. Thomson.*

For respondent there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. Chas. W. Fulton.*

Mr. Chief Justice Bean delivered the opinion of the court.

The plaintiff is engaged at Indianapolis, Indiana, in the business of manufacturing and selling combined air pumps, circulating pumps, and condensers, such as are used in steamboats for condensing the exhaust steam. The condenser consists of a metal cylinder, containing small tubes, usually five eighths or three quarters of an inch in diameter, through which cold water is passed by means of the circulating pump, the steam which is let into the spaces inside the condenser and surrounding the tubes being thereby condensed into water. The air pumps are used to supply the interior of the condenser with air, by means of which the water is returned to the boiler. The capacity of a condenser is determined by the square feet of tube or cooling surface. The defendant is an Oregon corporation, engaged in manufacturing, furnishing, and supplying machinery, pumps, engines, boilers, and other appliances for use in steamboats, mills, etc. On November 15, 1897, it wrote to the plaintiff, stating, in substance, that it had had several inquiries for combined air pumps, circulating pumps, and condensers, giving dimensions of engines, and asking plaintiff to give full data, "either number and length of tubes or square feet of cooling surface, diameter and stroke of engines and pumps," etc. On November 27 the plaintiff answered, saying there was not sufficient data in defendant's letter from which to calculate the steam consumption and size of condenser required, but quoted the following prices, f. o. b. Indianapolis, for pumps and condensers:

| H. P. of eng. | Feet tubes. | Size of air and circulating pumps. | Approx. dimen. | | | Price. | Weight about— |
|---|---|---|---|---|---|---|---|
| | | | Lgth. | Wdth. | Ht. | | |
| 50 | 80 | 5½x 6 & 6x 5 | 96 | 14 | 36 | $  265 | 880 lbs. |
| 100 | 160 | 7  x 8 & 8x 7 | 96 | 18 | 52 | 465 | 1,800 " |
| 150 | 240 | 7  x 8 & 8x 7 | 96 | 22 | 56 | 570 | 2,400 " |
| 200 | 320 | 8  x 9 & 9x10 | 122 | 22 | 60 | 705 | 4,000 " |
| 250 | 400 | 8  x 9 & 9x10 | 122 | 24 | 62 | 735 | 4,500 " |
| 300 | 480 | 10  x12 & 12x12 | 130 | 24 | 68 | 950 | 5,600 " |

On January 24, 1898, the defendant ordered of plaintiff, referring to prices and dimensions given in its letter of November

27, "one of your 5½x6 and 6x5 pumps, and condensers," and on February 28 wired it to "duplicate our order of January 24, and ship as soon as possible." On February 15 the defendant entered into contracts with the steamers Juneau and Maggie to furnish each of them "one combined circulating pump, air pump, and condenser, steam 5½ inches, water 6 inches, air 6 inches, stroke 5 inches, condenser to contain about 200 square feet of cooling surface." A short time thereafter the condenser ordered by the defendant on the twenty-fourth January, and which it intended for use in the Juneau, arrived, but, instead of being ninety-six inches in length, as stated in the plaintiff's letter of November 27, it was only fifty-four inches long, and its capacity (one hundred square feet of cooling surface) was wholly insufficient to comply with defendant's contract with the Juneau. The condenser ordered by wire February 28, which the defendant intended for use in fulfilling its contract with the Maggie, arrived soon afterwards, but was only fifty-four inches long, and contained eighty-eight square feet of cooling surface. Upon the arrival of the condensers, defendant accepted the same, but immediately notified plaintiff that they did not comply with the contract, and requested it to ship condensers at once "in accordance with dimensions given November 27," which the plaintiff refused to do, asserting that, because the condensers shipped contained more cooling surface than those ordered, there had been no breach of the contract. Defendant subsequently ordered of plaintiff two condensers of the "next larger size," with which to fill its contracts with the steamers Juneau and Maggie, at an expense of $510. This action is brought to recover a balance of $400 alleged to be due from the defendant to the plaintiff on account of the condensers purchased.

The complaint is in the usual form in actions for goods sold and delivered, and the controversy arises upon the counter-claim of the defendant. The answer sets up, in substance: That plaintiff offered and agreed to sell and deliver to defendant, f. o. b. Indianapolis, Indiana, combined steam, air, and circulating pumps and condensers, of the following descrip-

tion, size, and dimensions: "Pumps, 5½ inches by 6 inches and 6 inches by 5 inches; condensers, 96 inches long, 14 inches wide, and 36 inches in height; weight, 880 pounds,—for the sum of $265." That, relying upon such agreement, defendant entered into contracts to furnish each of the steamers Juneau and Maggie a combined circulating steam and air pump and condenser of the size and weight as stated. That thereupon it ordered of plaintiff two of such pumps and condensers, but that plaintiff failed and neglected to comply with its contract, in this: that it did not furnish a condenser ninety-six inches, but only fifty-four inches, long, which weighed one thousand four hundred and seventy pounds. That by reason thereof both of said condensers were entirely worthless, and of no value whatever to defendant. That it immediately notified plaintiff of the failure to comply with its contract, and demanded that it furnish two condensers ninety-six inches in length, which it refused to do. That at the time of the contract plaintiff had full knowledge that defendant had agreed to furnish each of the steamboats referred to with ninety-six-inch condensers, and also knew, and defendant alleges the fact to be, that it could not purchase such condensers elsewhere; and that plaintiff wholly refused to deliver and furnish them unless it agreed to pay the further sum of $510, which it was compelled to do in order to fulfill its contracts to supply the steamboats. That, by reason of the failure and refusal of the plaintiff to deliver the two pumps and condensers ninety-six inches in length, in accordance with its agreement, defendant was and is damaged in the sum of $510, and because the combined weight of the pumps and condensers was more than one thousand seven hundred and sixty pounds, namely, five thousand four hundred and twenty pounds, defendant was compelled to and did pay $54.90 freight, in which sum it asserts it is further damaged.

The plaintiff requested the court to instruct the jury that, "if plaintiff agreed to sell defendant a certain kind of a condenser, and delivered to defendant a different kind of a condenser, which is not accepted by defendant as performance of

the contract, the measure of damages is the difference in value between the condenser agreed to be delivered and the one actually delivered, if the one actually delivered is of less value than the one agreed to be delivered;'' and that in ascertaining the amount of the damages, if any, to the defendant, it had ''no right to consider any collateral contract made by defendant with the others for the sale of condensers, nor the amount actually paid or incurred by defendant in order to fulfill such collateral contract.'' The court refused to give either of the instructions requested, but charged the jury that, if the plaintiff knew, or had reasonable grounds to believe, that the condensers were purchased by the defendant, not for the purpose of general sale on the market, but to fill a particular contract, and it did not send what was ordered, or substituted something else that would not fill such contract, it would be liable in damages for any sum defendant was compelled to pay in order to fulfill its collateral contract; that, if plaintiff substituted a fifty-four-inch for a ninety-six-inch condenser, and thereby put defendant in a position where it would not be able to fulfill its contract, or had to spend money in order to do so, plaintiff would be liable for whatever it cost defendant to buy another condenser to supply the place of the one plaintiff should have furnished; that, if the ninety-six-inch condenser ordered would not have filled the defendant's contracts, and it was compelled to buy one of some other capacity for that purpose, it would be entitled to offset the difference in value between the condenser actually furnished and the one purchased; that, if there has been a breach of the contract, the fair measure of damages would be to require the defendant to pay the value of the two condensers received by it, allowing as offset any extra expense it was put to in order to obtain others to supply their places, that if plaintiff did not send the condensers ordered, and defendant had to purchase others to supply their places, it is entitled to credit in this action for the difference between the value of the condensers ordered and what it was compelled to pay for the new ones. The verdict and judgment were for the defendant, and plaintiff appeals.

Although there are several assignments of error, all involve the single question as to whether the court erred in permitting defendant to give in evidence the amount it was compelled to pay in order to fulfill its contracts with the Juneau and Maggie and instructing the jury, in effect, that, if the plaintiff did not furnish condensers of the length ordered, the measure of damages would be the difference between the value of those actually sent and what defendant was compelled to pay for others to comply with its collateral contracts. The general rule is not questioned that in cases of this kind, where the goods are not received by the vendee as in fulfillment of the contract, the measure of damages is the difference between the market value of the goods actually delivered and accepted and those ordered. The defendant contends, however, that this case forms an exception to the general rule, because the condensers were of a special manufacture, ordered for a particular purpose, and could not be had in the open market, and plaintiff knew at the time they were ordered that defendant desired them for the purpose of fulfilling its contracts with the Juneau and Maggie. But the facts of the case do not bring it within the exception contended for. It is true the condensers were of a special manufacture, but they were such as were manufactured by plaintiff for sale in the open market, were described in its catalogue, and had a value readily ascertainable. Moreover, the evidence which is contained in the correspondence between plaintiff and defendant shows that plaintiff did not, and had no reason to, believe that defendant desired the condensers to fulfill any particular contract it had, or which it contemplated making, and therefore there could be no warranty, express or implied, that they would do so. True, in its letter of November 15, asking for prices, it gives the dimensions of the engines for which it probably desired the condensers, but plaintiff declined to give any estimate of the size required because of the insufficiency of the data, and simply forwarded to the defendant a list price of half a dozen condensers of different sizes and capacities, from which to make its own selection. The defendant concluded that the smallest

condenser noted on the list, containing eighty feet of tube surface, would answer its purpose, and, after ordering it, entered into the contracts with the Juneau and Maggie which form the basis of its claim for damages.    These contracts do not call for condensers of the dimensions ordered from the plaintiff, but for condensers containing two hundred feet of cooling surface, without any specifications whatever as to their size.    If then, the condensers received by the defendant had been of the size and dimensions ordered, they would not have been of sufficient capacity to comply with defendant's collateral contracts.    While the plaintiff agreed to furnish condensers approximately ninety-six inches long, and failed to do so, for which it is liable in damages to the defendant, yet the number of feet of cooling surface was also stated, and was less than one half that required in defendant's contracts with the steamboats.    So that, if plaintiff had furnished the condensers as ordered, they could not have been used by the defendant in fulfilling its contracts, which is evidenced by the fact that, after their receipt, and after defendant knew their length, it did not order others of the size and dimensions contained in its first order, but of the "next larger size," containing, according the price list furnished by the plaintiff, one hundred and sixty feet of cooling surface.

If defendant had contracted to furnish condensers of the dimensions ordered from the plaintiff, and was unable to fulfill its contract because of plaintiff's default, or, if plaintiff had known that defendant intended them for use in the Juneau and Maggie, and had agreed to furnish them with that understanding, a different question from the one now before us would have been presented, and a different rule of damages would, perhaps, have been applicable.    But here defendant's collateral contracts were not for condensers of the dimensions ordered, and plaintiff did not know that it desired them for any particular use.    We are of the opinion, therefore, that the rule sought to be invoked by the defendant, that where machinery is ordered for a special purpose, and the seller has knowledge of that fact, but fails to comply with the order, the ven-

dee, after notice to the vendor, may replace it with other suitable machinery and charge the extra expense, if any, to the vendor, can have no application to the facts of this case; and, as there was no alteration or change in the condensers to bring them up to the size and dimensions ordered, the true measure of damages, in addition to the extra freight on account of the misstatement as to the weight, is the difference, if, any, between the value of the condensers delivered and those ordered: *Canon City Electric Light & Power Co.* v. *Medart Patent Pulley Co.* 11 Colo. App. 300 (52 Pac. 1030). We are of the opinion, therefore, that the court was in error in the admission of the testimony as indicated and in instructing the jury as to the measure of damages.

The judgment must therefore be reversed, and a new trial ordered.                                         REVERSED.