Decided 21 August, 1906.

## MINE SUPPLY CO. *v.* COLUMBIA MINING CO.

86 Pac. 798.

SALES—IMPLIED WARRANTY.

1. In the case of a sale for a particular purpose, where the buyer has no opportunity to inspect, but relies upon the judgment of the seller, there is an implied warranty that the article sold shall be reasonably suitable for the purpose intended; but where a stated article is ordered, the only warranty is that the one furnished will be of the kind ordered, even though it is known to the seller that the buyer intends to use the article for a special purpose.

For instance: A dealer having contracted to sell a machine called a "latest improved Huntington mill" for reducing ores, does not impliedly warrant that such mill will successfully reduce the ores of the mine at which it is to be used, though the seller knew the mill was being bought for that purpose; but he does impliedly warrant that the mill delivered shall be just the kind ordered, and there is a breach of the contract if an old style mill is furnished instead of the "latest improved."

SALES—WAIVER OF CLAIM OF DAMAGES FOR BREACH OF WARRANTY.

2. Retaining an article and endeavoring to use it, though it is not as contracted for, is not a waiver of a claim for damages for a breach of the contract of sale.

SALES—MEASURE OF DAMAGES FOR BREACH.

3. Where a seller delivers goods not of the kind or quality agreed upon, but they are accepted, the measure of the buyer's damages is the difference in value between the goods ordered and those delivered.

SALES—BREACH OF WARRANTY—ELEMENTS OF DAMAGE.

4. In case of a breach of a contract to furnish a specified kind of mill for reducing ores, where the mill has been retained, the buyer may recover as damages the expense incurred in testing the mill, the freight paid on imperfect parts that were not used, the cost of providing new parts necessary to make the mill conform to the contract, if the seller refuses or neglects to furnish them, the value of gold lost while testing the machinery, and the amount of wages paid the employees while idle on account of the defective mill.

SALES—PROVISIONS OF CONTRACT—BREACH.

5. The provisions in a contract of sale for the benefit of the seller are available to him only when he has complied with the contract, and cannot be relied upon for his protection after he has failed in performance.

From Baker: SAMUEL WHITE, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by the Mine & Smelter Supply Co. against the Columbia Gold Mining Co. The plaintiff is a dealer in mining machinery and supplies at Denver, Colo., and the defendant is a mining corporation in Baker County, in this state. In August, 1904, the plaintiff was advised that the defendant desired to remodel and enlarge its mill and mining plant, and thereupon sent an agent to sell to it such machinery and appliances as it might need. After looking over the mine, and being informed by the defendant's officers of the character of ore to be reduced, and that it contemplated the removal of ten stamps from its mill and the substitution of another kind of crushing machinery or mill therefor, prepared a list of machinery and appliances, including "one latest improved five-foot Huntington mill," which, on behalf of the plaintiff, he agreed to sell and the defendant agreed to purchase for the aggregate sum of $3,450, f. o. b. Denver, $450 of which was to be paid with the order, $1,000 when the goods arrived at Sumpter, the railroad station nearest the mine, and $2,000 within 30 days thereafter. The contract was in writing, and among other things stipulated that the plaintiff assumed

"no liability for damages on account of delays; nor can we make any allowance for repairs or alterations unless same are made with our written consent. It is agreed that no liability shall attach to us on account of damages or delays caused by such repairs or alterations."

The defendant began immediately to remove the old machinery and to make preparation for the reception and installation of the new, but it was not shipped in time to reach Sumpter until about the 28th of October, when the $1,000 payment was made as agreed upon, and the machinery taken to the mine and set up. A part of the machinery was satisfactory, but the Huntington mill, as defendant alleges, was not of the "latest improved," and was so defectively constructed that it could not be successfully operated. After it had been set up and the defects discovered, plaintiff was advised thereof and sent its manager to the mine, who, upon an examination of the mill, admitted that it was imperfectly constructed and agreed to replace the defective parts with new ones, which was done, but the defendant says they were no more satisfactory than the original. Plaintiff was again notified, and sent an expert machinist to ascertain the difficulty and to remedy the same; but, according to defendant's theory, he was unable to do so, and it was compelled to and did finally supply the defective parts by purchasing from another house. It refused to pay the balance due on the contract, and this action was commenced to recover the same. The defendant seeks to set off against the contract price the damages sustained by reason of the alleged breach of the contract. It had judgment in the court below, and the plaintiff appeals, assigning error in the admission of testimony and the giving and refusal of certain instructions.

REVERSED.

For appellant there was a brief over the names of *Albert Backus, George S. Reed* and *George Stidger,* with an oral argument by *Mr. Backus.*

For respondent there was a brief and an oral argument by *Mr. John Langdon Rand.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

It is unnecessary to notice the several assignments of error in detail. They involve substantially two questions: (1) Whether there was an implied warranty on the part of the plaintiff that the Huntington mill sold by it to defendant would successfully reduce the ores of defendant's mine, and was fit and proper for the purpose intended; and (2) the measure of damages, if there was a breach of the contract by plaintiff.

1. There was no express warranty of the character or capacity of the mill, but the court instructed the jury that, if plaintiff was aware of the purpose for which it was to be used by the defendant, the law implies a warranty that it should be suitable and fit for that purpose, and, if it was not, defendant is entitled to offset against the purchase price any damages it may have suffered on account of a breach of such warranty. We do not understand such to be the law. Where one contracts or agrees to supply an article to be applied or used for a particular purpose, and the buyer has no opportunity of inspection, but relies upon the judgment and skill of the seller, and not his own, there is an implied warranty that the article shall be reasonably fit and suitable for the purpose intended: *Morse* v. *Union Stock Yard Co.* 21 Or. 289 (28 Pac. 2, 14 L. R. A. 157); *Gold Ridge Min. Co.* v. *Tallmadge,* 44 Or. 34 (74 Pac. 325, 102 Am. St. Rep. 602). But where, as in this case, a known and described article is ordered, there is no implied warranty of its fitness, if it is actually furnished, although the seller was advised that it was intended for a special purpose. If the purchaser gets the article he buys, and buys that which he gets, he takes the risk of its suitableness for the intended purpose, unless there is an express warranty: 2 Mechem, Sales, § 1314; Benjamin, Sales (Bennett's 6 ed.), 644; *Lukens* v. *Freiund,* 27 Kan. 664 (51 Am. Rep. 429); *Goulds* v. *Brophy,* 42 Minn. 109 (43 N. W. 834, 6 L. R. A. 392). There is, however, in the latter case, an implied warranty that the article delivered or furnished complies with the description: 2 Mechem, Sales, § 1334.

The mill which plaintiff agreed to sell to the defendant was described as the "latest improved Huntington mill." This was a specific article of a known and recognized description among persons dealing in mining machinery, and, if the mill furnished by the plaintiff conformed to the description and was of the kind and character ordered, there was no implied warranty that it would answer the purposes of the defendant, and the plaintiff is not liable for damages on that account. But if, as the defendant alleges and the testimony tended to show, the mill furnished was not the "latest improved," but an old-style mill, there was a breach of the contract, for which the plaintiff is liable in damages: *Steiger* v. *Fronhofer,* 43 Or. 178 (72 Pac. 693); *Lenz* v. *Blake,* 44 Or. 569 (76 Pac. 356).

2. The fact that it made an effort to use and operate the mill was not a waiver of its right to damages for such breach: *Norton* v. *Dreyfuss,* 106 N. Y. 90 (12 N. E. 428); *Northwest Cordage Co.* v. *Rice,* 5 N. D. 432 (67 N. W. 298, 57 Am. St. Rep. 563).

3. The ordinary rule in a case of this kind is that the measure of damages is the difference in the value of the goods ordered and those furnished and accepted: 2 Mechem, Sales, § 1817; *Dean Pump Works* v. *Astoria Iron Works,* 40 Or. 83 (66 Pac. 605); *Schumann* v. *Wager,* 36 Or. 65 (58 Pac. 770).

4. But there may be special circumstances which will enhance the damages, such as if it was known to the seller that the article was intended for a particular purpose, in which case the vendee will be entitled to recover such damages as he may have sustained as the direct and proximate result of the breach: 2 Mechem, Sales, § 1771. Thus, in the case of a breach of a warranty on the sale of an engine to be used in elevating grain at a warehouse, the vendee may recover the expenses incurred in putting up the engine, employing men and teams preparatory to the operation of the warehouse, and damages for the injury done by the elements to grain which he was unable to handle because of the insufficiency of the engine: *Drake* v. *Sears,* 8 Or. 209. And so in this case, the mill having been

purchased by the defendant under the circumstances disclosed by the testimony, the plaintiff is liable for any loss defendant may have sustained as the natural and proximate result of the breach of the contract, if the mill furnished was not of the kind ordered. And, in estimating the damages, the expenses and labor incurred in testing the mill, freight paid on imperfect parts furnished by the plaintiff, but which could not be used, the cost of providing new parts necessary to make the mill conform to the contract, if plaintiff refused or neglected to supply them, loss of free gold while testing the mill, the wages paid the mine crew while idle on account of the defective mill, and the like, may be considered, but no loss incurred by reason of the delay of the plaintiff in shipping the mill at the time alleged to have been agreed upon. The contract expressly stipulated that plaintiff should not be liable for damages on that account.

5. There is also a provision in the contract that the plaintiff should not be responsible for repairs or alterations unless made with its written consent, nor liable for damages on account of delays caused by such repairs or alterations. This stipulation can only apply in case plaintiff complied with its contract. If it did not furnish a mill of the kind and description specified in the contract, and defendant was damaged by reason thereof, it cannot shield itself from liability behind a stipulation in a contract with which it did not comply.

This, we think, substantially disposes of all the questions argued on this appeal. Judgment reversed and new trial ordered. REVERSED.