Argued April 9, affirmed July 17, rehearing denied September 25, 1928.

# W. A. MARTIN ET AL. v. FRANK M. NEER.

(269 Pac. 342.)

For appellant there was a brief and oral arguments by *Mr. John Bayne* and *Mr. W. C. Winslow.*

For respondent there was a brief over the name of *Messrs. Weatherford & Wyatt,* with an oral argument by *Mr. J. R. Wyatt.*

ROSSMAN, J.—■■ While there are several assignments of error, all raise the same question, that is, whether the plaintiffs were entitled to recover damages upon the basis of the price which Strong promised to pay for the manufactured lumber or whether the plaintiffs were required to be content with the difference between the market value of the timber and the price they agreed to pay for the same. The damages sought were profits which the plaintiffs anticipated they would gain by manufacturing defendant's timber into lumber. Some of defendant's exceptions seem to challenge the plaintiffs' right to recover anticipated profits. Ever since the decisions in *Masterton* v. *Mayor of Brooklyn*, 7 Hill (N. Y.), 61 (42 Am. Dec. 38), and *Wakeman* v. *Wheeler & Wilcox Mfg. Co.*, 101 N. Y. 205 (4 N. E. 264, 54 Am. Rep. 676), there has been no reluctance to grant a recovery because that which is sought is calculated in mercantile affairs as a profit. This court has so held a number of times. Some of our previous decisions are: *McGinnis* v. *Studebaker*, 75 Or. 519 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868); *Bredemeier* v. *Pacific Supply Co.*, 64 Or. 576 (131 Pac. 312); *Hoskins* v. *Scott*, 52 Or. 271 (96 Pac. 1112); *Wisner* v. *Barber*, 10 Or. 342. But, before a contemplated profit can be recovered the evidence must establish that it was reasonably certain to accrue. Uncertainty as to the amount is not fatal, but an uncertainty as to whether any benefit or gain would be derived bars a claim for damages founded on alleged profits. In an extensive footnote to the case of *Wells* v. *National Life Association of Hartford*, 53 L. R. A. 33, at page 71, the editor states: "The profits to be derived by the

lumberman from logging and lumber contracts are not only proximate and direct, but also peculiarly certain owing to the facility and accuracy with which the cost of execution may be estimated.'' The court under appropriate instructions cautioned the jury that only profits certain to accrue could be recovered.

The specific problem before us is whether the plaintiffs are entitled to prove and recover the profits which they would have made under their collateral contract with Strong. The defendant objected when the plaintiffs offered this contract in evidence and now insists that the plaintiffs are not entitled to base their damages upon the premise, that had the timber been manufactured into lumber and supplied to Strong, the transaction would have yielded to them a profit. The much cited case of *Hadley* v. *Baxendale,* 9 Exch. 341 (5 Eng. Rul. Cas. 502), we believe will assist in the solution of our difficulty. It enlarged the scope of damages recoverable for the breach of a contract. The portion most frequently quoted is:

''If the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant and thus known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases, not affected by any special circumstances, from such a breach of contract.''

■ A contracting buyer who proposes to use the purchased article for some special, unusual, profitable purpose unbeknown to the vendor, and finds his purpose defeated through the failure of the vendor to make delivery, will be unable to show that the damages sustained through the failure of the vendor to make delivery constitutes the direct and natural result of the breach; hence notice is necessary to convert consequential damages arising from the special circumstance into proximate damages. Such a special circumstance is illustrated in *Dean Pump Works* v. *Astoria Iron Works,* 40 Or. 83 (66 Pac. 605). Failure of the iron works to apprise the manufacturer of the pumps of their intended use defeated recovery of damages which were peculiar to that situation. Again, such special circumstances may arise when a buyer expects, at the time of the purchase, to resell the article and derive a profit in the resale. *Hadley* v. *Baxendale, supra,* was cited by this court with approval in *Blagen* v. *Thompson,* 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315), in behalf of the rule which permits the injured party to charge the other with loss of profits on collateral contracts upon proving notice; from the decision we quote:

"The broad general rule in such cases, as we gather it from the authorities, is, that the plaintiff may recover such damages, including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach by the defendants; and in determining what may reasonably be supposed to have been within the contemplation of the parties as the natural consequences of a breach, all the facts surrounding the execution of the contract and known to both parties may be considered, even if these be such as

would not necessarily enter into it, if unknown to the defendant. It is on this principle that an injured party is allowed to charge the other with loss on collateral contracts, on proving notice, which in the absence of such notice, would not be considered within the contemplation of the parties."

4. Loss of profits from collateral contracts was also held recoverable in *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360 (171 Pac. 569, 174 Pac. 152). See, to similar effect, *Bredemeier* v. *Pacific Supply Co.,* *supra,* and *Gordon* v. *Curtis Bros.,* 119 Or. 55 (248 Pac. 158). The rule is thus stated in Sedgwick, Damages (9 ed.), Section 166:

"When notice is given of a special use for material, the defendant who fails to deliver or delays delivery is liable for the special damages thereby caused, whether the material was needed for construction or manufacture, for packing, or for fuel."

In support of this rule the writer refers to several cases which we have examined involving the manufacturing of lumber out of timber. In 8 R. C. L., Damages, Section 66, the editor thus states the rule:

"Loss of profits growing out of an existing collateral or subordinate agreement may be recovered where they were within the contemplation of the parties when the original contract was made, but, as in other cases of special damage, the defendant must have had notice of the existence of such collateral contract at that time."

Since the plaintiffs desired to recover anticipated profits from their collateral contract with Strong, the problem presents itself, did the evidence warrant the jury in finding that when the plaintiffs and defendant entered into their contract, the defendant contemplated that the plaintiffs would manufacture the timber into lumber and offer it for sale. As is

suggested by Mr. Justice HOLMES, in *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U. S. 540 (47 L. Ed. 1171, 23 Sup. Ct. Rep. 754), the record rarely discloses that the party in default discussed with the other during the course of the negotiations the measure of damages ensuing in the event of a breach, and that therefore the courts are compelled to work out a rule of damages "on terms which it fairly may be presumed he would have assented to if they had been presented to his mind."

■ The undisputed facts presented by the record are that during the course of the negotiations the plaintiff W. A. Martin informed the defendant that the plaintiffs' purpose in regard to the timber was "to manufacture it into lumber" and that the plaintiffs owned a sawmill. The evidence also justifies the inference that the defendant knew the plaintiffs were arranging for a site for their mill upon ground adjoining his farm. The timber sold was small second growth fir. The fact that the lumber which could be produced from these trees would be soft and of limited dimensions, and that the plaintiffs had three years to manufacture, would seem to negative any possible impression in defendant's mind that the plaintiffs perhaps intended to build with it themselves. The contract of sale required the plaintiffs to remove all of it within three years' time, and to pay for their purchase in advance of removal in blocks of 100,000 feet. The plaintiffs are men of very limited financial resources; plaintiffs and defendant have been acquainted with one another for about eight years' time. These circumstances, we believe, would warrant a jury in concluding that the defendant knew when he entered into the contract, that the plaintiffs contemplated the

manufacture of his timber into lumber for the purpose of sale at a profit to themselves.

■ It is true, as is suggested in 35 Cyc. 645, that mere general knowledge that goods are bought for sale will not render recoverable profits as an element of damages. But knowledge exact in detail as to just what loss will result is not required: 8 R. C. L., Damages, Section 28. Professor Williston, in his work on Sales, Section 599a, suggests: "The character of the contract, the known character of the buyer's business" may be sufficient to notify the vendor that the loss in question would be the natural consequence of the breach. In view of the court's very careful instruction to the jury upon this subject of investigation, we believe that no error was here committed.

■ The problem remains, however, whether the plaintiffs are entitled to recover their damages upon the basis of the price which Strong promised to pay, or upon the market price. We assume from the evidence that lumber cut from second growth fir of the type that stands upon the defendant's land would command a different market value than that cut from first growth timber. The evidence discloses that due to the rapid growth of the trees upon the defendant's property the wood is softer than that found in old growth timber. Although the complaint alleges that the market value of this lumber is $16 per thousand, there is no evidence in the record of the market value of such lumber; the answer denies the allegation which we have just mentioned. One of the defendant's witnesses, who was called for the purpose of establishing the cost of converting second growth trees into lumber, testified to the prices received by himself for his lumber.

He receives $16 per thousand feet for planed lumber, less 5 per cent and less 2 per cent for cash; the cost of planing is $2.50 per thousand feet. He makes no endeavor to select grades, but sells his output as it runs. His mill produces an average of 8,000 feet per day and is located several miles from the proposed site of the plaintiffs' mill. Due to its small capacity we do not assume that its prices would establish the market quotation for that vicinity. If there was in fact no market price the plaintiffs could recover upon the basis of the price contracted for by their buyer: *Trigg* v. *Clay*, 88 Va. 330 (13 S. E. 434, 29 Am. St. Rep. 723); *Sedro Veneer Co.* v. *Kwapil*, 62 Wash. 385 (113 Pac. 1100). But we do not understand that the injured party in effecting recovery is always limited to the market price. In our case the plaintiffs had not effected a sale of the lumber when they purchased from the defendant his timber. Hence, they could not notify him of the prices to be received. The contract granted them three years to manufacture the timber into lumber; hence, the existing market price of lumber at the time of the execution of the contract, even if known to the defendant, could have been of little, if any, benefit to him. The important item of information to the defendant was the probable margin of profit. These circumstances readily reveal that the importance of the resale price is more apparent than real.

In Williston on Sales (2 ed.), Section 599d, we find:

"The seller may have had notice of subcontract, but not of the price at which the resale was to be made. In such a case he will be liable for such ordinary profit as might be expected on a resale."

In Mechem on Sales, Sections 1766 and 1767, we find:

"If, when the contract of sale is made, the seller knows not only of the fact of the resale, but also of the particular price to be received upon it, there can usually be but little difficulty in holding him responsible upon the basis of that particular price. If, however, though he knows of the fact of the resale, he does not know the price, he could not be held liable upon the basis of the particular price if it were unusual or extravagant. He must, nevertheless, be held to contemplate that the resale is to be at a fair and reasonable profit at least, and, if he knows that the article is not one which has a market price, he may be held liable upon the basis of the contract price, if that is not such as to yield an unreasonable or unfair profit."

"Ordinarily, it is said, the price to be received upon the resale would, presumptively, be held to be a reasonable price; but if the facts in any given case are such as to show such price to yield an extravagant or extraordinary profit,' the seller will not be bound in absence of knowledge of it; 'and, in order to assess the damages, the court must be put in possession of sufficient evidence to enable it to arrive at a conclusion in respect to what would amount to a reasonable profit on the transaction.' "

The rule is thus stated in 8 R. C. L., Damages, Section 66:

"The recovery in such case is limited to a reasonable and fair profit, such as might reasonably have been in contemplation by both parties. Extraordinary and unusual profits cannot be recovered even though the defendant knew of the collateral contract, unless he knew its terms, and hence knew that such a profit might be made."

To the same effect see Sutherland on Damages (4 ed.), § 662, and Sedgwick on Damages (9 ed.),

§ 163. The recent decision by Judge GILBERT in *Ozmo Oil Refining Co.* v. *Cotton & Co.,* 278 Fed. 722, is in accord with the above views:

"It is contended that the notice of resale given by the plaintiff to the defendant was insufficient to form the basis of a demand for damages arising out of loss of profits, in that the notice made no mention of the market in which the wax had been resold, and no information that the resales had been made at a profit, and the defendant contends that, in the absence of such notice to the defendant, the plaintiff must content itself with damages to be estimated on the basis of the general market or the actual value of the goods. The contention is against the decided weight of authority. 24 R. C. L. 81; *Guetzkow Bros.* v. *A. H. Andrews & Co.,* 92 Wis. 214 (66 N. W. 119, 53 Am. St. Rep. 909, 52 L. R. A. 209); *Howard Supply Co.* v. *Wells et al.,* 176 Fed. 512 (100 C. C. A. 70); *Armeny* v. *Madson & Buck Co.,* 111 Ill. App. 621."

We realize that all of the foregoing citations relate to the sale of personal property. We have pursued this investigation because the parties seem to have felt that the rules applicable to such property governed their contract. In the following citations the facts were quite similar to those before us; that is, a sawmill operator contracted with an owner to purchase his timber, expecting at the time to derive a profit from the sale of the lumber which he proposed to manufacture from the timber. Damages calculated upon the basis of the anticipated profits was held the measure of recovery: *Fail* v. *McRee,* 36 Ala. 61; *Atkinson* v. *Morse,* 63 Mich. 276 (29 N. W. 711); *Goodrich* v. *Hubbard,* 51 Mich. 63 (16 N. W. 232); *Long* v. *McCauley* (Tex.), 3 S. W. 689; *Martindale* v. *Lobdell-Emery Mfg. Co.,* 189 Mich. 477 (155 N. W. 559, L. R. A. 1918F, 1). See,

also, generally, 17 R. C. L., Logs and Timber, Section 28, and the extensive footnote to *Wells* v. *National Life Assn. of Hartford,* 53 L. R. A. 33. We conclude therefore, that the rules for measuring damage which the lower court applied were the proper ones.

■ The court below received in evidence the contract between plaintiffs and Strong; it was admissible for the limited purpose of proving that the plaintiffs had made a *bona fide* sale of their lumber: *Hoskins* v. *Scott,* 52 Or. 277 (96 Pac. 1112).

The plaintiffs' financial condition does not appear entirely satisfactory to us. To the court it seems that two men who were about to embark in the hazardous venture of logging some land and converting the logs into lumber would have need for more shining silver and gleaming gold than these plaintiffs possessed. In such a venture a liberal bank account is often as indispensable as willing hands. But we are not in a position to say that the plaintiffs were unable to perform their contract. In its instructions the court laid stress upon this element and emphasized the fact that the plaintiffs came before the jury with a burden resting upon them to establish that they were able to perform their undertaking.

We have carefully examined all other assignments of error and find that the record is free from reversible error. The judgment of the lower court is therefore affirmed.

Affirmed. Rehearing Denied.

Rand, C. J., and Coshow and Bean, JJ., concur.